UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JORDYN R. MCDONALD, INDIVIDUALLY AND                      PLAINTIFFS
AS PARENT AND STATUTORY GUARDIAN ON
BEHALF OF T.A., MINOR

vs.                                                        NO. 3:20-CV-391-CRS

DNA DIAGNOSTICS CENTER, INC., *et al.*                    DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' renewed motion to amend their complaint under Federal Rule of Civil Procedure 15. DN 37. Plaintiff Jordyn R. McDonald ("McDonald"), individually and in her capacity as parent and statutory guardian of T.A., a minor, once again requests the Court's leave to amend the original complaint to add a negligence claim against Defendants Natera, Inc. ("Natera") and DNA Diagnostics Center, Inc. ("DNA Diagnostics") (collectively "Defendants") on behalf of T.A. Natera and DNA Diagnostics both filed responses in opposition to the motion. DN 38; DN 39. Plaintiffs replied. DN 40. The matter is now ripe for adjudication. For the following reasons, Plaintiffs' motion will be denied by separate order.

### I. BACKGROUND

McDonald, individually and in her capacity as parent and statutory guardian of T.A., a minor, brought this action against Defendants DNA Diagnostics and Natera, "two entities involved in genetic testing," as well as Cicily Muhammad, an employee of DNA Diagnostics, concerning an alleged erroneous paternity test. DN 8-1 at 1. In 2014, McDonald, who was pregnant at the time, alleges she contracted with Defendants for a paternity test to determine whether Eric J. Ralston ("Ralston"), Plaintiff's then-boyfriend, was the father of the child. DN 1-1 ¶ 10. On November 19, 2014, test results reported that Ralston was not the father, and, as a result, McDonald

1

states that she and Ralston ended their relationship, as Ralston did not believe himself to be the father of the child. *Id.* ¶¶ 12–13. In the intervening years between 2014 and 2017, subsequent paternity tests ruled out two other past boyfriends as being the father. *Id.* ¶¶ 22–26. However, around January 10, 2017, as the complaint states, Ralston agreed to another paternity test after seeing photographs of T.A. and noticing a physical resemblance. *Id.* ¶ 36. Plaintiffs claim the 2017 results showed that Ralston was in fact the father, which they allege was confirmed again by still another paternity test in 2019. *Id.* ¶¶ 37, 43.

McDonald commenced the present action in Kentucky state court on April 28, 2020, alleging fraudulent misrepresentation, loss of parental consortium on behalf of T.A., and a claim for punitive damages. DN 1-1. On June 4, 2020, Defendants removed the case to federal court. DN 1. On August 10, 2020, Plaintiffs moved to voluntarily dismiss T.A.'s loss of parental consortium claim—which the Court granted, DN 35—and to amend their complaint to include a negligence claim on behalf of both Plaintiffs. DN 13-2 ¶¶ 54–58. Plaintiffs' motion to amend was denied in an October 30, 2020 order. DN 33. This Court held that McDonald's negligence claim was barred by Kentucky's statute of limitations and, therefore, futile. DN 32 at 4–5. As for T.A.'s negligence claim, we held that Defendants did owe a duty to T.A. to exercise reasonable care in performing the paternity test and reporting the results, but that the proposed amendment still failed on futility grounds because Plaintiffs had not adequately pleaded the injury element of T.A.'s negligence claim. *Id.* 5–14. Specifically, the Court ruled that the damage allegedly done to T.A.'s relationship with his parents as a result of the incorrect test results was not a legally cognizable injury because it was essentially a claim for loss of parental consortium, which is limited to cases of wrongful death under Kentucky law. *Id.* at 13. Furthermore, the remaining "injuries" of T.A. claimed in the proposed amended complaint lacked "further factual enhancement" regarding either

what the injury actually was or how it was connected to the alleged incorrect paternity tests results. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); DN 32 at 12–14. Therefore, the Court held that these injuries did not meet the plausibility standard set forth in *Ashcroft v. Iqbal*. DN 32 at 12–14.

Now, in again moving to add a negligence claim on behalf of T.A., Plaintiffs apparently seek to address the deficiencies highlighted by the Court in its last opinion by alleging a more specific injury suffered by T.A. DN 37-2 ¶¶ 42, 56. The proposed amended complaint claims that Defendants' actions caused T.A. to suffer "Separation Anxiety Disorder." *Id.* ¶ 56. Plaintiffs allege in their motion that T.A. was diagnosed with this disorder by a licensed child psychologist whose report they attached as an exhibit to the proposed amended complaint. *Id.* at 34–50. Plaintiffs also add a new paragraph in the factual background section of their complaint that alleges the following:

> T.A. reports regular fearful and negative communications and interactions with his mother and T.A. now suffers from diagnosed psychological trauma causing regular excessive distress when separated from home or certain individuals; regular excessive worry about losing these individuals or about them being harmed; regular worry about experiencing an unfortunate event (such as getting lost or ill) that causes separation from his attachment figures; persistent reluctance or refusal to sleep away from home or from his attachment figures; and, frequent nightmares about separation and also suffers from the associated physiological manifestations of this psychological trauma including but not limited to psychomotor agitation and sleep impairment.

*Id.* ¶ 42. As before, Defendants oppose the amendment on the grounds of futility. DN 38; DN 39.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, futility of the amendment is one basis upon which a court may deny a motion to amend. *See Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598, 613 (6th Cir. 2005). "A proposed amendment is futile if the amendment could not

3

withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Therefore, when a party opposes an amendment based on futility, a court will apply the Rule 12(b)(6) standard in making the futility determination. *See, e.g.*, *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 644 (W.D. Ky. 2018).

A decision to dismiss under Rule 12(b)(6) is based "purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). "But the district court need not accept a bare assertion of legal conclusions." *Id.* (internal quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### III. DISCUSSION

In their motion to amend, Plaintiffs claim to have cleared the hurdles discussed by the Court in denying their previous motion to amend. It is true that the alleged injury of separation anxiety disorder is a more concrete injury than claiming that T.A. was "caused to suffer injury both mental

and physical" as was claimed in their original proposed amended complaint. DN 32 at 12. However, although Plaintiffs repeatedly claim to have alleged a "cognizable injury" this time around, they still have failed to allege a cognizable claim upon which relief could be granted. Plaintiffs label their proposed amendment as a claim for negligence, yet Plaintiffs are once again attempting to recover for a loss of parental consortium. As discussed in this Court's previous opinion, DN 32 at 13, the Court of Appeals of Kentucky case *Lambert v. Franklin Real Estate Co.* limits the claim for loss of parental consortium to cases of wrongful death only. 951 S.W.3d 770, 780 (Ky. Ct. App. 2000).

There is no allegation of wrongful death in the present case. Instead, each iteration of Plaintiffs' complaint, including the present one, has put forward various allegations that Defendants' negligence had a negative and permanent impact on T.A.'s relationship with his parents. For instance, the proposed amended complaint alleges that T.A.'s relationship with his parents "will never be the same" and that he "has suffered a loss of parental consortium." DN 37-2 ¶¶ 30, 31. Plaintiffs also claim that "T.A. will never have the full involvement of a father in his life which he might have had if his parents had not been split [by Defendants' alleged negligence]." *Id.* ¶ 41. Likewise, they allege that McDonald "emotionally abandoned T.A. for a time," and that "T.A. reports regular fearful and negative communications and interactions with his mother." *Id.* ¶¶ 26, 42.

The only substantive changes made to the complaint are (1) that T.A. was allegedly diagnosed with separation anxiety disorder; (2) one paragraph describing the alleged symptoms of said diagnosis; and (3) a child psychologist report attached as an exhibit. *Id.* ¶¶ 42, 56; *Id.* at 34–50. Plaintiffs claim that, as a direct result of erroneous paternity test results, T.A. "was caused to suffer the cognizable injury and permanent impairment of F93.0 Separation Anxiety Disorder."

5

DN 37-2 ¶ 56. Plaintiffs do not articulate the exact causal mechanism by which the alleged injury occurred. Obviously, they do not allege that the test results themselves somehow caused T.A. to suffer separation anxiety. Rather, it is the effect that the initial incorrect test results had on T.A.'s parents and their respective relationships with T.A. that has allegedly caused him to suffer separation anxiety disorder. The attached child psychologist report supports this understanding of the claim. The report states, "As a result [of the initial incorrect paternity test results], a rupture in T.A.'s family of origin transpired, leaving T.A. with potential mental health sequalae related to being separated from his biological father, and with the impact of these events affecting the entire family unit." *Id.* at 35. The report also states that "[w]hen discussing the departure of . . . [Ralston] . . . from his life, T.A. became psychomotor agitated," and that "T.A. is experiencing fear and anguish related to his understanding of why . . . [Ralston] has left." *Id.* at 46–47.

        Therefore, based on what is on the face of the complaint as well as the contents of the attached report, it is clear that T.A.'s loss of relationship with his parents is the only possible causal link between his alleged injury and Defendants' actions. This point is crucial in how the Court understands T.A.'s claim. Although Plaintiffs repeatedly state that their claim is one for negligence and not for loss of parental consortium, the essence of the claim is that T.A. now suffers an emotional injury because of the "rupture" that occurred in his "family of origin" due to Defendants' alleged negligence. As is explained further below, such alleged emotional distress may serve as a measure of damages once a loss of parental consortium has been shown. However, if a defendant's negligence causes an emotional injury due to interference with the parental relationship, that injury is not compensable in Kentucky unless the parent also suffered death as a result of the defendant's negligence.

The Kentucky Supreme Court created the cause of action for loss of parental consortium in *Giuliani v. Guiler* to protect "the right of a child to a parent's love, care and protection so as to provide for the complete development of that child." 951 S.W.2d 318, 320 (Ky. 1997). Central to its reasoning, the court explained, is the need for a remedy that goes beyond Kentucky's wrongful death damages, which only "compensate for the loss of the deceased's earning power and do not include the affliction to the family." *Id.* at 320. The court went on to note that "[p]arental consortium is based on the loss of love and affection. It remains to be seen how the court and triers of fact will evaluate such loss in monetary terms." *Id.* at 322.

In *Hyman & Armstrong P.S.C. v. Gunderson*, decided about ten years after *Giuliani*, Kentucky's highest court addressed the issue of damages related to a child's loss of parental consortium claim and the methods by which a party may prove such damages. 279 S.W.3d 93, 117–18 (Ky. 2008). In that case, a young mother died several days after a brief hospital stay for the birth of her second child. *Id.* at 99. The woman's husband and her two minor children brought suit against the doctor and pharmaceutical company, claiming that her death was related to a medication she was given to stop lactation. *Id.* Loss of parental consortium claims were alleged on behalf of the two children. *Id.* To offer proof of the children's claims and resulting damages, the plaintiffs presented expert testimony at trial that one of the children "expressed a sense of abandonment and sadness" as a result of his mother's death. *Id.* at 117. The expert witness testified that the other child "had attachment and trust issues stemming from the fact that he was never able to know or bond with his mother, and that his family was thrown into chaos after her death." *Id*. The court held that the challenged testimony was admissible in that it helped "to assist the jury in understanding how the . . . children were affected by their mother's death and the extent

of the emotional injury from that loss, which was clearly relevant in assessing damages on the loss of parental consortium claim." *Id.*

In general, *Gunderson* is instructive in understanding how allegations of emotional distress factor into a case in which a child's relationship with his parent is affected by a defendant's negligence. An emotional injury may serve as proof that a loss of consortium has occurred, assuming that the other requirements for that claim are met, and it acts as a potential measure of damages for a loss that is difficult to quantify. The basic effect of the expert testimony in *Gunderson* would have been no different had the doctor testified that one of the children suffered from separation anxiety disorder. Giving a name to certain symptoms caused by a fracture in the parental relationship would simply further "assist the jury in understanding . . . the extent of the emotional injury." *Id.*

Yet, in *Gunderson*, the emotional injury was compensable under Kentucky law because the parent was deceased. Here, because there is no accompanying claim for wrongful death, Plaintiffs' allegation that T.A. suffers from separation anxiety disorder, when it apparently sprung from a negative impact on T.A.'s relationship with his parents, does nothing more for Plaintiffs' claim than the previous attempt to amend. As the Court explained in its previous opinion, if T.A.'s loss of parental consortium claim "was not valid as a stand-alone claim, it does not become valid when plead as an injury in the context of a negligence claim." DN 32 at 13. The Court does not wish to minimize what T.A. has allegedly experienced. However, under Kentucky law, he unfortunately has plead an alleged injury without a cognizable claim that would entitle him to recovery. Therefore, the Court finds that granting Plaintiffs' renewed motion to amend would be futile because the proposed amended complaint could not withstand a motion to dismiss under Rule 12(b)(6).

## IV. CONCLUSION

For the reasons discussed herein, Plaintiffs' motion to amend, DN 37, will be denied by separate order.

April 28, 2021

Charles R. Simpson III, Senior Judge
United States District Court