UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JORDYN R. MCDONALD, INDIVIDUALLY AND           PLAINTIFFS
AS PARENT AND STATUTORY GUARDIAN ON
BEHALF OF T.A., MINOR

vs.                                                                               NO. 3:20-CV-391-CRS

DNA DIAGNOSTICS CENTER, INC., *et al.*                    DEFENDANTS

## MEMORANDUM OPINION

### I.  INTRODUCTION

      This matter is before the Court on a number of motions submitted both by Plaintiffs Jordyn R. McDonald ("McDonald"), individually and in her capacity as parent and statutory guardian of T.A., a minor, and Defendants DNA Diagnostics Center, Inc. ("DDC") and Natera, Inc. ("Natera"). Defendants filed motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Plaintiffs' remaining claims for fraudulent misrepresentation and punitive damages. DN 43; DN 46. Amid the filing of Defendants' motions, Plaintiffs filed their "Second Renewed Motion to File First Amended Complaint." DN 44. It constitutes their third attempt to amend the original complaint after being denied twice previously by this Court. DN 33; DN 42. After both Defendants filed responses in opposition, DN 49; DN 50, Plaintiffs filed a motion to supplement their motion to amend. DN 53. Lastly, following Plaintiffs' motions, Defendants both filed motions for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, claiming that Plaintiffs' effort to amend their complaint is frivolous and amounts to bad faith. DN 56; DN 57. Each of the above motions have been fully briefed and are ripe for adjudication. For the following reasons, the Court will issue a separate order in which Plaintiffs' motions to amend and

to supplement will be denied and Defendants' motions for judgment on the pleadings and for sanctions will be granted.

## II. BACKGROUND

In 2014, McDonald, who was pregnant at the time, contracted with Defendants for a paternity test to tell whether her then-boyfriend Eric J. Ralston ("Ralston") was the father of T.A. DN 53-3 ¶ 7. On November 19, 2014, Defendants reported that there was a 0% chance that Ralston was the father. *Id.* ¶ 9. Thinking that he was not the father of T.A., Ralston broke up with McDonald. DN 1-1 ¶¶ 12–13. McDonald then assumed that T.A.'s father must have been Alex Avery ("Avery"), who was ultimately listed as such on T.A.'s birth certificate. *Id.* ¶¶ 14–15; DN 53-3 ¶ 60. Avery and his mother ("the Averys") took on familial roles in T.A.'s life. DN 53-3 ¶ 19. However, upon noticing T.A.'s growing physical resemblance to Ralston, Plaintiff contracted with Defendants for another paternity test in 2017. *Id.* ¶ 20–21. This time, on January 12, 2017, Defendants reported there was a 99.9999999% probability that Ralston was T.A.'s father. *Id.* ¶ 22. Upon receiving this information, McDonald initiated an action in Kentucky state court seeking child support and to establish paternity. *Id.* ¶¶ 29–33. Jefferson Family Court ordered yet a third paternity test, which was again performed by Defendants. *Id.* ¶ 30–31. This test again showed a 99.9999999% probability that Ralston was the father of T.A. *Id.* ¶ 32. Upon a motion for summary judgment filed by Plaintiff McDonald, the family court "recognized Ralston as the legal father of T.A. and ordered child support be paid." *Id.* ¶ 33; *see also* DN 49-1; DN 49-2. At the time of the 2019 test, Plaintiffs claim DDC was "acting under the color of state law as a contractor of the state government of the Commonwealth of Kentucky when performing DNA testing and reporting results." *Id.* ¶ 64.

McDonald commenced the present action in Kentucky state court on April 28, 2020, alleging fraudulent misrepresentation, partial loss of parental consortium on behalf of T.A., and a claim for punitive damages. DN 1-1. Defendants subsequently removed the case to federal court. DN 1. Plaintiffs moved to voluntarily dismiss T.A.'s loss of parental consortium claim—which the Court granted, DN 35—and to amend their complaint to include a negligence claim on behalf of both Plaintiffs. DN 13-2 ¶¶ 54–58. Plaintiffs' motion to amend was denied in an October 30, 2020 order. DN 33. This Court held that McDonald's negligence claim was barred by Kentucky's statute of limitations and, therefore, futile. DN 32 at 4–5. As for T.A.'s negligence claim, the Court held that Defendants did owe a duty to T.A. to exercise reasonable care in performing the paternity test and reporting the results, but that the proposed amendment still failed on futility grounds because Plaintiffs had not adequately pleaded the injury element of T.A.'s negligence claim. *Id.* 5–14. Shortly thereafter, Plaintiffs again moved to amend their complaint, attempting to allege a cognizable injury this time by relying on an expert's report that diagnosed T.A. with separation anxiety disorder. DN 37. The Court once again denied Plaintiff's motion to amend on the grounds that the claim was essentially one for loss of parental consortium, which is only allowed in Kentucky in the context of wrongful death actions. DN 41–42.

After the Court's most recent order denying Plaintiff's motion to amend, the only claims left from the original complaint were for fraudulent misrepresentation and for punitive damages. *See* DN 1-1. Both defendants filed motions for judgment on pleadings on these claims, arguing that the complaint does not meet the heightened pleading standards for claims of fraud under Federal Rule of Civil Procedure 9(b). DN 43; DN 46. Meanwhile, Plaintiffs filed yet another motion to amend. DN 44. This time, Plaintiffs allege that Defendants are liable under 42 U.S.C. § 1983 for depriving Plaintiffs of their constitutional rights related to integrity of the family unit.

3

*Id.* Defendants filed separate responses in opposition on the grounds that the amendment would be futile since the claim could not withstand a Rule 12(b)(6) motion to dismiss. DN 49; DN 50. In addition, convinced that Plaintiffs' § 1983 claims were not well-founded in the law, Defendants both sent "safe harbor" warning letters along with copies of anticipated motions for sanctions requesting that Plaintiffs withdraw their motion within twenty-one days. DN 56-1; DN 56-2; DN 57-1; DN 57-2. This apparently prompted Plaintiffs to submit a motion to "supplement" their motion to amend. *See* DN 53. The stated purpose of this motion was to "clarify the situation for the Defendants and avoid wasting precious judicial resources on the issue of sanctions." DN 53 at 2. Defendants both filed responses in opposition to Plaintiffs' motion to supplement and then filed motions for sanctions and attorney's fees under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 at the end of the twenty-one-day safe harbor period. DN 54; DN 55; DN 56; DN 57.

## III. ANALYSIS

The Court will address Plaintiffs' motion to amend and related motion to supplement, Defendants' motions for judgment on the pleadings, and Defendants' motions for sanctions each in turn.

### A. Plaintiff's Motion to Amend and to Supplement

Under Federal Rule of Civil Procedure 15(a), a party may amend its complaint as a matter of right within 21 days after serving the complaint or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Futility of the amendment is one basis upon which a court may deny a motion to amend. *See Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598, 613 (6th Cir. 2005). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Therefore, a court will apply the Rule 12(b)(6) standard when a party opposes a proposed amendment on futility grounds. *See, e.g.*, *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 644 (W.D. Ky. 2018).

A decision to dismiss under Rule 12(b)(6) is based "purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). "But the district court need not accept a bare assertion of legal conclusions." *Id.* (internal quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Plaintiffs' motion to amend seeks to add a claim under 42 U.S.C. § 1983. DN 44. This statute "creates a private right of action against officials who, under color of state law, deprive

individuals of their statutory or constitutional rights." *Schattilly v. Daugharty*, 656 F. App'x 123, 127 (6th Cir. 2016). Furthermore, "a private entity which contracts with the state to perform a traditional state function . . . may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). "In order to state a claim under section 1983, it must be established that (1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

So far, in attempting to amend their complaint, Plaintiffs have focused on the alleged negligence that occurred with the initial prenatal paternity test conducted in 2014, which occurred as a transaction between private parties, as the basis of their claim. *See* DN 13; DN 37. Now, apparently to satisfy the requirements of § 1983, in addition to reworking the legal theory of liability, Plaintiffs have substantially reworked the presentation of the facts and the nature of the alleged injury. Plaintiffs argue that since DDC was under contract with the Commonwealth of Kentucky[1] at the time it performed the court-ordered paternity test in 2019, both Defendants were acting under the color of state law and that the "inconsistency" between those results and the 2014 results is what actually caused the injury—here, a deprivation of constitutional rights related to integrity of the family unit and familial association. DN 44. In their motion to supplement, they expand on this argument by claiming that the family unit formed with the Averys was also disrupted in addition to the biological family unit when Defendant's reported the results of the 2019 paternity test. DN 53 at 5–8; DN 53-3 ¶¶ 100–102.

---

[1] Plaintiffs do not specify the subject of the contract. However, they attached to the motion a screen shot from Kentucky's governmental website showing that the contract was with the Executive Branch's Department of Income Support. DN 44-6.

Plaintiffs' position is without merit. Although Defendants allegedly were negligent in 2014, reporting the correct results in 2019 in the context of a paternity action—results that Plaintiff then relied on in moving for summary judgment in state court on the issue of paternity—can in no way result in § 1983 liability. Plaintiffs stretch the bounds of both language and logic in attempting to articulate how the reporting of correct results is injurious to Plaintiffs in the first instance. In support of their argument, Plaintiffs cite *Woodward v. Director, Office of Workers' Compensation Programs*, 991 F.2d 314, 319 (6th Cir. 1993) for the proposition that "conflicting or irreconcilable items of evidence ('not the father' in 2014 then 'yes the father' in 2019) must be evaluated without reference to their chronological relationship." DN 51 at 8 (internal quotation marks omitted). Plaintiffs further conclude that "[t]his implies that the relevant issue in the analysis of the 6th Circuit is the ***inconsistency*** of the evidence ***itself*** rather that the 'when' of each conflicting result. It is the inconsistency or irreconcilable nature of the items of evidence as a whole that is actionable." *Id.* (emphasis in original).

Plaintiffs clearly misinterpret *Woodward* and misapply it to the facts of this case. That case dealt with an administrative law judge's ("ALJ's") misapplication of the "later evidence rule" during proceedings for black lung benefits. *Woodward*, 991 F.2d. at 319–20. Because of "the known progressive nature of pneumoconiosis," the rule had been invoked in other cases "to credit more recent positive study results over earlier negative results." *Id.* at 319. In the case at issue in *Woodward*, the ALJ relied on the rule to justify limiting his review of evidence to the readings of five recent scans that showed the claimant to have only "simple" pneumoconiosis and refusing to review three earlier readings that showed him to have "complicated" pneumoconiosis. *Id.* The Sixth Circuit explained that since the conflicting readings were irreconcilable due to the progressive nature of the condition, the ALJ misapplied the later evidence rule and should have

7

instead weighed the relative merits of all the readings. *Id.* at 320. Considered in this way, the chronological relationship of the scans—the basis of the latest evidence rule—loses significance and the question becomes which of the readings are more reliable. *Id.*

*Woodward*'s holding is narrow and is only relevant considering the progressive nature of pneumoconiosis. The Sixth Circuit's pronouncement that the conflicting scans must be viewed without reference to their chronological relationship was not meant as a blanket rule applicable to all situations as Plaintiffs suggest. It was specific to the facts of that case where later readings of scans showed that the individual's condition was not as severe as earlier readings and the illness was one that is known to always get worse and never better. *Woodward* only states that, under those circumstances, one cannot rely solely on later scans simply because they are later in time. It does not state that the inconsistency between test results itself is actionable.[2] Likewise, it does not state that a plaintiff may superimpose past negligent acts of a defendant that were not performed under color of state law onto later acts that allegedly were performed under color of the law. Plaintiffs' suggestion that this case does imply those propositions constitutes a willful disregard of context. Therefore, Plaintiffs' reliance on *Woodward* to "bridge the gap" between Defendants' conduct in 2014 and 2019 is without merit.

The Court is not tasked with weighing the relative merits of the conflicting results as was the ALJ in *Woodward*. One set of test results is incorrect. There is no longer any question as to which one that is.[3] As Plaintiffs state in their proposed amended complaint, tests in 2017 and 2019 both showed Ralston to be the father, and the Jefferson Family Court relied on the 2019 test in

---

[2] The only "action" involved in *Woodward* was the individual miner's appeal of a denial of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45. *Woodward v. Dir., Office of Workers' Comp. Programs*, 991 F.2d 314, 315 (6th Cir. 1993).
[3] Although Plaintiffs focus on the inconsistency between results as the basis of their § 1983 claim, they do not dispute that Ralston is the biological father of T.A. *See, e.g.*, DN 53-3 ¶¶ 29–34. By implication, they do not challenge the results of the 2017 or 2019 paternity test results.

Plaintiff McDonald's paternity action. The Court's task here is only to look at what § 1983 requires to state a claim and whether Plaintiffs have met those requirements. They have not. Plaintiffs do not allege that Defendants acted under the color of state law in 2014. While they do allege such conduct in 2019, reporting of correct paternity test results cannot be the basis of an injury under § 1983. Defendants' actions at issue—reporting correct test results pursuant to court-ordered DNA paternity testing—are incapable of depriving Plaintiffs of any rights. If anything, the 2019 results allowed Plaintiffs to enforce existing rights that had not yet been enforced due to the alleged error of the 2014 test. In this way, even if the proposed amended complaint with respect to Plaintiff's § 1983 claims is taken as true and construed in the light most favorable to Plaintiffs, it does not state a claim upon which relief could be granted. Furthermore, their motion to supplement the amendment does nothing to cure this deficiency since it only adds several statements primarily related to the familial role of the Averys, which is irrelevant to the legal question of whether the reporting of correct paternity results constitutes an injury under § 1983.[4] Therefore, Plaintiffs' motions to amend and to supplement the amendment will be denied.

### B. Defendants' Motions for Judgment on the Pleadings

Analysis of a motion under Rule 12(c) relies on the same standard applied to a Rule 12(b)(6) motion for failure to state a claim, which the Court has already described above. *Lindsay*

---

[4] The proposed supplemented amended complaint also adds ambiguous language that seems to imply Defendants may have failed to exercise reasonable care while acting as a government contractor. *See* 53-3 ¶¶ 101–02 (stating that "[t]he Defendants' failure to exercise reasonable care when and while conducting DNA paternity testing and reporting the results as a government contractor . . . caused [Plaintiffs to suffer injury]"). However, Plaintiffs do not dispute that Ralston is the biological father of T.A., and in fact have relied on this fact as the basis of their claims throughout the parties' motion practice so far. *See* DN 13; DN 37. Further, if the language is intended to allege that Defendants negligently performed or reported the 2019 paternity test while acting under the color of state law and thereby deprived Plaintiffs of federal rights, the Court will not read this language as curing the deficiencies of their § 1983 claim. In addition to not disputing that Ralston is the biological father, the proposed supplemented amended complaint does not articulate how Defendants failed to exercise reasonable care with respect to the 2019 paternity test, making the allegation a "naked assertion devoid of further factual enhancement" that the Court does not have to accept as true under the Rule 12(b)(6) analysis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

*v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). In short, "[w]e construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and decide whether the plaintiffs can prove any set of facts in support of their claims that would entitle them to relief." *Id.*

After extensive motion practice, Plaintiffs' only remaining claims are for fraudulent misrepresentation and punitive damages. The basis of Defendants' motions is that the complaint fails "to plead fraudulent misrepresentation with the particularity required by Federal Rule of Civil Procedure 9(b)." DN 43; DN 46.

"On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 597 n.14 (2007) (citing Rule 9(b)–(c)). This is the purpose of Rule 9(b), which states that parties "alleging fraud . . . must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007) (stating that Rule 9(b) is meant to give defendants "notice of the specific conduct with which they were charged" and protect them from "fishing expeditions and strike suits"); *see also Loxodonta Aviation, LLC v. Delta Private Jets, LLC*, No. 19-109-DLB-CJS, 2020 U.S. Dist. LEXIS 139643, at *26 (E.D. Ky. Aug. 5, 2020) (stating that "[c]laims of fraudulent misrepresentation based on Kentucky law are subject to Rule 9(b)'s heightened pleading standard"). The Sixth Circuit has interpreted this rule to "require a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation marks omitted). This entails that "allegations of fraudulent misrepresentation must be made with

sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* at 162. In short, a complaint must specify "why the statements were fraudulent." *859 Boutique Fitness LLC v. CycleBar Franchising, LLC*, No. 5:16-cv-018-KKC, 2016 U.S. Dist. LEXIS 59744, at *10 (E.D. Ky. May 5, 2016).

Here, Plaintiffs' claim of fraudulent misrepresentation, labeled as "Count I" in the complaint, states that "Defendants either knew the material misrepresentation that there was a 0% chance Ralston was the father was false or made such material representation recklessly." DN 1-1 ¶ 53. The rest of Count I merely states most of the elements of fraudulent misrepresentation in a conclusory fashion. *See* DN 1-1 ¶¶ 50–56; *see Flegles, Inc. v. Truserve Corp*, 289 S.W.3d 544, 548–49 (Ky. 2009) (stating the elements of fraudulent misrepresentation). Since the count, taken together with the background section of the complaint, consists solely of conclusory statements regarding allegedly fraudulent conduct, the complaint provides no factual basis that could give rise to an inference that a false representation was made knowingly or recklessly or that there was a fraudulent scheme intended to induce Plaintiff McDonald to act. Therefore, it fails to meet the heightened standard of Rule 9.

It is also important to note that although Plaintiffs' motion amend, DN 44, focused solely on the claims under § 1983, the proposed amended complaint also reworked Count I of fraudulent misrepresentation as well. *See* DN 44-2; DN 53-3. Thus, for the sake of thoroughness, the Court will briefly analyze these proposed amendments as well even though Plaintiffs do not mention these specific amendments in their motion to amend and the Court has already denied that motion above. The proposed amended complaint states that the alleged material misrepresentation of 2014 "was apparently false as proven by two . . . conflicting subsequent DNA paternity tests [in 2017 and 2019]." DN 53-3 ¶ 73. Curiously, Plaintiffs also claim that the results reported from the 2017

11

and 2019 tests also constitute "material misrepresentations" and were made with knowledge that they were false or made recklessly. *Id.* ¶¶ 74–75, 80–81. Plaintiffs allegations are not only internally inconsistent, but, as with the original complaint, they do nothing to explain how the statements were fraudulent or to support an inference that the statements were made knowingly or recklessly. Therefore, even under the proposed amended complaint, Plaintiffs have not met their burden under Rule 9(b).

The facts of this case as laid out by Plaintiffs support an inference that the 2014 test results were incorrect as is evidenced by two later tests that showed Ralston to be the father, the last of which the Jefferson Family Court relied on in determining Ralston to be the legal father of T.A. However, this factual basis does not lead to a plausible inference of a fraudulent scheme or even that Defendants knew the 2014 results were incorrect when they reported them or did so recklessly. If there was a fraudulent scheme afoot, it would make no sense to knowingly induce Plaintiff McDonald to act on incorrect results then give her correct results *twice* afterward; or, at least as pleaded, the list of conclusory statements do not support such an inference. As admitted by Defendant DDC, "It indicates, at most, the occurrence of an error in the overall process of the prenatal test," which would give rise to an inference of negligence at best. DN 43-1 at 6. Although Plaintiffs repeatedly assert that "[s]uch inconsistent reporting of DNA paternity testing is *prima facie* negligent, grossly negligent, reckless and fraudulent conduct by the Defendants,"[5] DN 47 at 2; *see, e.g.*, DN 53-3 ¶ 43, these allegations of fraud are merely conclusory and, therefore, do not meet the heightened standard for pleading claims of fraud under Rule 9(b). Therefore,

---

[5] On a related note, Plaintiffs also assert that the doctrine of *res ipsa loquitor* "may be the basis for a determination of fraud." DN 47 at 5. Plaintiffs base this assertion on the fact that fraud may be established by circumstantial evidence and some Kentucky cases have described *res ipsa* as "simply one type of circumstantial evidence." *Id.* (quoting Perkins v. Hausladen, 828 S.W.2d 652, 654 (Ky. 1992). However, the doctrine, which allows a jury to "reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it," only allows an inference of negligence, not fraud. *See Perkins*, 828 S.W.2d at 655. Plaintiffs have not presented any caselaw to the contrary.

12

Defendants' motions for judgment on the pleadings will be granted as to Plaintiffs' claim for fraudulent misrepresentation. *See United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (affirming dismissal of fraud claim under Rule 12(b)(6) for failure to "adequately plead fraud in violation of Rule 9(b)").

As a result, Plaintiffs' remaining claim for punitive damages must also be dismissed, as it does not constitute a stand-alone cause of action. *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 139 (Ky. 2003) ("[P]unitive damages are not to be bifurcated from the issues of liability and compensatory damages." (citing Ky. Rev. Stat. Ann. § 411.186(1))). Accordingly, Defendants' motions will be granted with respect to Plaintiffs' claim for punitive damages as well.

### C. Defendants' Motions for Sanctions

Defendants both move for sanctions and attorney's fees under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. "Rule 11 is concerned with an attorney's certification to the court," namely, that "the attorney believes on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose." *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1229 (6th Cir. 1989). A party seeking sanctions must comply with Rule 11's safe harbor provision by serving upon the opposing party the anticipated motion for sanctions twenty-one days before it is filed with the court. Fed. R. Civ. P. 11(c)(1)(A).

Under Rule 11, a district court "may impose an appropriate sanction on any attorney, law firm, or party" if the "pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." Fed. R. Civ. P. 11(c); *Allied Mach. & Eng'g Corp. v. Competitive Carbide, Inc.*, No. 1:11CV2712, 2012 U.S. Dist.

LEXIS 59014, at *5 (N.D. Ohio Apr. 25, 2012) (internal quotation marks omitted). However, Rule 11(c)(5)(A) places an explicit limitation on imposing monetary sanctions against a represented party on the basis of (2) above. In the Sixth Circuit, the test for imposition of Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (internal quotation marks omitted). Good faith is not a defense. *Jackson*, 875 F.2d at 1229. If the district court finds a violation of Rule 11, then it must impose sanctions. *Id.* However, the court has broad discretion in deciding which sanctions are appropriate. *Id.*

"The principal goal of Rule 11 sanctions is deterrence with compensation being a secondary goal." *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992). "Equitable considerations and the least severe sanction adequate to serve the purpose should be factors in the sanction determination." *Id.* (internal quotation marks omitted). The court must also inquire into a sanctioned attorney's ability to pay. *Jackson*, 875 F.2d at 1230. *Legair v. Circuit City Stores, Inc.*, 213 F. App'x 436, 440 (6th Cir. 2007). However, when conducting this inquiry, "the burden of proof is on the sanctioned party to provide evidence of financial status." *Legair*, 213 F. App'x at 440. "An unsupported claim regarding financial status is clearly insufficient." *Id.*

Turning now to 28 U.S.C. § 1927, that statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In general, § 1927 sanctions are appropriate when the court finds "conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court" and "which, as a

14

result, causes additional expense to the opposing party." *Orlett*, 954 F.2d at 419. The Sixth Circuit has held that "sanctions under § 1927 may be appropriate when an attorney reasonably should know that a claim is frivolous," although "simple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927." *Id.* (internal quotation marks omitted). As with Rule 11, good faith is not a defense to a motion for sanctions under § 1927. *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

In this case, the Court finds that, under the circumstances of this case, the conduct of Plaintiffs' counsel in filing a motion to amend the complaint to include a § 1983 claim and then filing yet another motion to supplement that motion, requiring further expenditure of resources by Defendants and this Court, was objectively unreasonable and unreasonably multiplied the proceedings of this case. Therefore, sanctions against said counsel are required in order to deter similar conduct in the future. *See Williams v. White Castle Sys.*, 526 F. Supp. 2d 830, 847 (M.D. Tenn. 2007) (granting sanctions for alleging baseless claim); *Haisha v. Countrywide Bank, FSB*, No. 11-11276, 2011 U.S. Dist. LEXIS 83551, at *14 (E.D. Mich. July 29, 2011) (awarding sanctions under Rule 11 and § 1927 for filing frivolous claim); *Albert v. Edward J. DeBartolo Corp.*, Nos. 91-3685/3835/3957, 92-3702, 1993 U.S. App. LEXIS 19668, at *20 (6th Cir. July 20, 1993) (reversing district court's denial of motion for sanctions under Rule 11 and § 1927 when the plaintiff's claim was baseless and plaintiff maintained party as defendant when there was no "colorable argument" that she was an "employer" under Title VII).

Defendants argue in their motions that Plaintiffs' § 1983 claim, which Plaintiffs' counsel certified to the Court was warranted under existing law under Rule 11, is baseless and frivolous. The Court agrees with this assessment. Plaintiffs' previous attempts to amend were weak and ultimately unsuccessful but did not amount to frivolity. However, with Plaintiffs' third attempt to

15

amend, a line has been crossed from zealous advocacy into conduct that "falls short of the obligations owed by a member of the bar to the court." *Orlett*, 954 F.2d at 419. Beyond the fact that there is nothing in the vast body of § 1983 caselaw that supports asserting a claim against a party for correctly reporting the results of a paternity test, the very idea that the facts of this case could support an inference of liability under § 1983 defies all logic and common sense. Every iteration of the complaint so far has acknowledged that the alleged error occurred with the initial prenatal paternity test that occurred in 2014 and that this testing occurred as a transaction between private parties. DN 1-1; DN 13; DN 37. Regardless of whether there was an error in the 2014 results, the claim that Defendants' reporting of correct results in 2019—results which were then relied upon by Plaintiff McDonald in establishing Ralston as T.A.'s legal father and in being awarded child support—deprived Plaintiffs of constitutional rights is frivolous on its face. Despite counsel's eagerness to seek a remedy for the unfortunate circumstances faced by his clients, he should have known that this theory of liability is beyond the pale and would cause Defendants unnecessary expense. Furthermore, in defending his untenable position, Plaintiffs' counsel completely misapplied Sixth Circuit caselaw to argue that the inconsistency between the test results itself was somehow actionable. In doing so, counsel blatantly took *Woodward* out of context to support his position.

Counsel's main argument against imposition of sanctions is that this is a case of first impression. DN 58 at 1–3, 6–8; DN 60 1–4, 6–9. This is a mischaracterization of the issues. Two motions to amend ago, the Court was faced with what appeared to be an issue of first impression: whether a duty is owed to an unborn child to exercise reasonable care in administering a DNA paternity test and reporting its results. DN 33. The Court answered this question in the affirmative. Plaintiffs' counsel repeatedly touts this fact as evidence of the novelty of this case. However, that

16

issue, which arose in the context of a claim for negligence, and the Court's ruling on it have little relevance to Plaintiffs' attempt to assert a claim under § 1983. Whether companies involved in performing paternity testing may be liable under § 1983 for reporting correct results that are relied upon to establish legal paternity (even after allegedly reporting incorrect results) does not deserve the honor of the title "issue of first impression" as it is nonsensical when stated as a cause of action. Therefore, this argument is without merit.[6]

Defendants clearly satisfied the safe harbor requirement of Rule 11 when they sent letters to Plaintiffs' counsel along with copies of their anticipated motions for sanctions. What could potentially present a procedural issue is that Defendants also seek sanctions for the filing of the motion to supplement, which was submitted after Defendants sent their safe harbor letters, as well as for the original motion to amend that asserted the § 1983 claims. However, the motion to supplement, DN 53, was merely an extension of the original motion that prompted Defendants to seek sanctions and did nothing to correct the issues brought up by Defendants in their letters to Plaintiffs' counsel. Therefore, it was unnecessary for Defendants to serve Plaintiffs' counsel with a second motion for sanctions after the motion to supplement was filed since counsel was already on notice and then only acted to increase the proceedings and expense of this case even further by filing another motion that needlessly supplemented the original frivolous claim. *See First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 527 (6th Cir. 2002) ("The issue of effective compliance [of Rule 11's safe harbor provision] is to be resolved on a case-by-case basis."). Regardless, this issue is not problematic as the Court's granting of sanctions is under both Rule 11

---

[6] In a related vein of argument, counsel asserts that this case presents "convoluted facts" that have caused "confusion around the issue of cognizable injury." DN 58 at 2. The Court tends to disagree, as the facts of this case are relatively straightforward. And, although Plaintiffs' prior attempts to amend have been thwarted by legal limitations on what qualifies as cognizable injury, this is not the same as "confusion." Regardless, neither justify abusing the legal system by filing baseless claims.

and § 1927, which does not have a safe harbor provision, and the filing of DN 53 unreasonably and vexatiously multiplied the proceedings of this case.

Since the imposition of sanctions here is based on the filing of claims not supported by existing law, sanctioning of the represented party is not necessary or warranted; sanctions will only be awarded against Plaintiffs' counsel.  The Court believes that granting some monetary sanctions is necessary in this case to deter similar conduct in the future as Plaintiffs' counsel pursued a particularly frivolous claim and has continued to argue vigorously that he did nothing unreasonable.  Therefore, the Court will grant sanctions under Rule 11 and § 1927 against Plaintiffs' counsel, Jeffrey A. Sexton, for the filing of Plaintiffs' motion to amend, DN 44, and motion to supplement the amendment, DN 53.

However, although Defendants have requested all attorney's fees incurred as result of responding to the motions at issue here, using our broad discretion to decide which sanctions are appropriate, the Court will impose only modest monetary sanctions of $250 to each Defendant, totaling $500.  Although Mr. Sexton's conduct was sanctionable, we believe this is the least severe sanction necessary to serve as a warning and to deter Mr. Sexton from filing baseless claims in the future.  If Mr. Sexton claims an inability to comply with these monetary sanctions, then he may submit to the Court financial documents establishing such inability to pay within fourteen days.

## IV.  CONCLUSION

For the above reasons, Plaintiffs' motions to amend their complaint, DN 44, and to supplement their proposed amendment, DN 53, will be denied by separate order, and Defendants' motions for judgment on the pleadings, DN 43; DN 46, and for sanctions under Rule 11 and § 1927, DN 56; DN 57, will be granted by separate order.

August 20, 2021



Charles R. Simpson III, Senior Judge
United States District Court